IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| H.H. FRANCHISING SYSTEMS, INC. | : | Case No. 1:17-cv-368 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | |
| | : | ORDER DENYING DEFENDANTS' |
| MARTIN PAWSON, *et al.*, | : | PETITION TO COMPEL |
| | : | ARBITRATION |
| Defendants. | : | |
| | : | |

This matter is before the Court on Defendants' Petition to Compel Arbitration and Dismiss this Action or To Stay the Action Pending Resolution of Arbitration. (Doc. 6.) Plaintiff has filed a Memorandum in Opposition (Doc. 10) to which Defendants have replied (Doc. 11). For the reasons that follow, the Petition is **DENIED**.

## I.     BACKGROUND

### A. Facts

Plaintiff H.H. Franchising Systems, Inc. ("Franchising Systems"), an Ohio corporation based in Cincinnati, franchises businesses offering senior care and home health services throughout the United States known as "Home Helpers." (Doc. 9 at PageID 210-211, ¶¶ 1, 9.) Plaintiff has more than 300 Home Helpers franchises throughout the United States.

Defendants Martin Pawson and Carolyn Minichino are individuals who reside in California. (*Id.* at PageID 210 ¶¶ 2, 3.) In April 2015, Defendants entered into a franchise agreement with Plaintiff for a term of 15 years. (*Id.* at PageID 211-212 ¶¶ 10, 13.)

Under the Franchise Agreement, Defendants agreed to pay Plaintiff a monthly royalty, a monthly national branding fee, and late fees. (*Id.* at PageID 212, ¶¶ 14, 16-17.) Defendants also

1

agreed to operate their franchise only under the trade name "Home Helpers" and to keep the franchise's methods of operations confidential. (*Id.* at PageID 213, ¶¶ 18-20.) Finally, Defendants agreed not to divert business to any competitor, not to own or have any interest in any business that competes with a Home Helpers franchise during the term of the Franchise Agreement, and that doing so would result in irreparable injury to Plaintiff entitling Plaintiff to its reasonable attorneys' fees and court costs. (*Id.* at PageID 213-214, ¶¶ 22, 24.)

As part of the franchise agreement, the parties agreed that "[e]xcept as otherwise provided… any and all disputes between the parties, whether or not arising out of or related to the [franchise agreement], shall be submitted" to arbitration. (Doc. 1 at PageID 61.) The agreement provides for some exceptions to the arbitration clause, including an option for the Plaintiff to opt out of arbitration if seeking injunctive relief of if a claim exceeds $100,000. (*Id.* at PageID 60-61.) Section 16.3 of the franchise agreement contains the large claim exception to the arbitration clause:

> Exception to Arbitration. Notwithstanding the provisions of Section 16.2 above, if the amount in controversy in any dispute between Franchisor and Franchisee exceeds $100,000 in the aggregate, Franchisor shall have the right to require that the matter be adjudicated in either the Common Pleas Court of Hamilton County, Ohio or the United States District Court for the Southern District of Ohio, in lieu of arbitration. If an arbitration demand has already been filed in connection with such a dispute, Franchisor shall have the right to remove the matter to such court.

(*Id.* at PageID 61.) Finally, the Franchise Agreement contains a severability clause at Section 18.7 requiring, "In the event that any provision of this Agreement . . . shall be held . . . to be invalid [or] unenforceable . . . [a]ll other provisions of this Agreement shall otherwise remain in full force and effect." (*Id.* at PageID 64.)

In July 2015, Plaintiff provided a one-week training program in Cincinnati, Ohio where Defendants learned the Home Helpers business model, business plans, and various trade secrets

to enable them to be successful in operating their Home Helpers franchise. (Doc. 9 at PageID 214, ¶¶ 25.) Defendants received access to the Home Helpers operations manual and began operating their Home Helpers franchise in October 2015. (*Id.* at PageID 214, ¶¶ 26-27.)

Once Defendants began operating their franchise, they suspected that "many of the promises Plaintiff had made to us regarding the franchise were simply not true," particularly regarding brand recognition, leads provided, and ongoing support and training. (Doc. 6-1 at PageID 198, ¶ 6.) Defendants had relied on Plaintiff's advice in purchasing the franchise, (*Id.* at PageID 197-198, ¶¶ 3-6), but had come to believe "[i]t was sold with much hype and came with many misrepresentations that we only later discovered." (Doc. 11-1 at PageID 283, ¶ 4.)

In March 2017, Defendants stopped paying royalties and national branding fees, and informed Plaintiff of their intention to "cease affiliation" with Plaintiff. (Doc. 9 at PageID 214, ¶¶ 28-29.) Defendants then began operating a new business under the name "Waterfall Homecare" that allegedly competes with a Home Helpers franchise. (*Id.* at ¶ 31.)

**B. Procedural Posture**

On May 30, 2017, Plaintiff Franchising Systems filed a Complaint for Preliminary and Permanent Injunctions alleging Defendants Pawson and Minichino violated the Franchise Agreement. (Doc. 1.) Plaintiff alleges claims for breach of contract, repudiation of the franchise agreement, breach of a covenant not to compete, unjust enrichment, violation of the Uniform Trade Secret Act, an action for accounting, and personal guaranties by the Defendants. Plaintiff sought injunctive relief, compensatory damages in an amount "believed to exceed $75,000, together with lawful interest thereon," and costs and attorneys' fees. (*Id.* at PageID 12-13.) Defendants petitioned to compel arbitration (Doc. 6), and Plaintiff filed an Amended Complaint including the same claims but now seeking injunctive relief, compensatory damages in an

amount "believed to exceed $100,000, together with lawful interest thereon," and costs and attorneys' fees. (Doc. 9 at PageID 220-221.)

The matter is now before the Court on the Defendants' Motion to Compel Arbitration. (Doc. 6.) Defendants contend the Franchise Agreement's arbitration clause mandates that "any and all disputes between the parties" be submitted to arbitration. (*Id.* at PageID 185.) According to Defendants, the two exceptions to mandatory arbitration—injunctive relief and large claims—do not apply here. Specifically, the injunctive relief carve-out applies to only one of the seven claims alleged, and the large claim exception is unconscionable and, therefore, should be severed and deemed unenforceable. (Doc. 6 at PageID 186-187.)

In contrast, Plaintiff opposes arbitration because the exceptions are reasonable and enforceable. (Doc. 10.) Specifically, Plaintiff argues that the injunctive relief exception applies to all claims that relate to the injunctive relief sought, placing all of Plaintiff's claims within the scope of the injunctive relief exception. (*Id.* at PageID 227-228.) Plaintiff further maintains that the the large claim exception to the arbitration clause applies as the clause is reasonable and enforceable and because the Plaintiff's Amended Complaint alleges damages in excess of $100,000. (*Id.* at PageID 229.)

## II.     ANALYSIS

### A.  Legal Standard for Arbitration

Defendants ask this Court to compel arbitration and to dismiss this action pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). The FAA "manifests 'a liberal federal policy favoring arbitration agreements.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "To enforce this dictate, [the FAA] provides for

a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 and 4). Moreover, district courts are required to compel arbitration of arbitrable claims upon the motion of a party, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

The Sixth Circuit explains:

> "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25 (1983). "There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*Masco Corp.*, 382 F.3d at 627. Only express provisions within the arbitration agreement excluding specific disputes will remove the claim from the scope of arbitration. *NCR Corp. v. Korala Assocs.*, 512 F.3d 807 (6th Cir. 2008). In order to enforce an arbitration clause, courts may sever unreasonable provisions, especially when the arbitration agreement contains a severability provision. *Scovill v. WSYX/ABC Sinclair Broadcast Group, Inc.*, 425 F.3d 1012 (6th Cir. 2005).

The Plaintiff, the Defendants, and this Court agree that the arbitration clause to which the parties agreed is valid and enforceable. Thus, this Court must grant Defendants' petition and

5

compel arbitration unless the specific exceptions to arbitration in the Franchise Agreement dictate a different result.

### B. Large Claim Exception and Unconscionability

Section 16.3 of the Franchise Agreement—the "large claim exception"—provides, "[I]f the amount in controversy in any dispute between Franchisor and Franchisee exceeds $100,000 in the aggregate, Franchisor shall have the right to require that the matter be adjudicated in. . . the United States District Court for the Southern District of Ohio, in lieu of arbitration."[1] (Doc. 1 at PageID 61.) Defendants urge this Court not to enforce the large claim exception because it allows only Plaintiff to avoid arbitration and, therefore, is unconscionable. Plaintiff disagrees, contending that the large claim exception is both substantively and procedurally reasonable and, therefore, must be enforced.

"[S]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In evaluating whether the parties entered into a valid agreement to arbitrate, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be

---

[1] Plaintiff initially alleged compensatory damages in an amount "believed to exceed $75,000, together with lawful interest thereon" and costs and attorneys' fees. (Doc. 1 at PageID 12-13.) It was only after Defendants petitioned to compel arbitration (Doc. 6) that Plaintiff filed an Amended Complaint including the same claims but now seeking compensatory damages in an amount "believed to exceed $100,000, together with lawful interest thereon" and costs and attorneys' fees. (Doc. 9 at PageID 220-221.) The Court notes that $75,000 is the jurisdictional minimum in a diversity of citizenship case (28 U.S.C. §1332(a)), and it is common practice to plead that the amount in controversy exceeds $75,000 to establish the Court's jurisdiction. Because it appears that the claims in this case plus interest and attorneys' fees likely involve an amount in excess of $100,000 and because neither party contends that the amount in controversy here is less than $100,000, the Court accepts that the amount in controversy exceeds $100,000 in this case.

6

resolved in favor of arbitration." *Great Earth Cos.*, 288 F.3d at 889 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Under Ohio law,[2] "[u]nconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 358, 884 N.E.2d 12, 20 (2008) (quoting *Lake Ridge Academy v. Carney*, 66 Ohio St. 3d 376, 383, 613 N.E.2d 183 (1993)). "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.* at 358-359.

### a. *Procedural Unconscionability*

Procedural unconscionability concerns the "individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (quoting *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.,* 143 Ohio App. 3d 708, 758 N.E.2d 1173, 1181 (2001)). As the Ohio Supreme Court explains, "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' 'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" *Id.* at 361-362 (quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 834, 621 N.E.2d 1294 (2d Dist. 1993)).

In the case at bar, Defendants are individuals who had not previously owned or operated a franchise (Doc. 11-1 at PageID 282, ¶ 2). However, according to application materials

---

[2] The Franchise Agreement contains an Ohio choice of law provision, and all parties argue the Court should apply Ohio law to the instant Petition to Compel Arbitration. (*See* Doc. 1 at PageID 63; Doc. 6 at PageID 189, fn. 3; Doc. 10 at PageID 229.)

Defendants submitted to Plaintiff, Defendant Pawson is educated and owned a large printing business for 23 years that generated more than seven million dollars annually. (*See* Doc. 10 at PageID 261-262.) Defendant Minichino owns and operates a successful salon and spa business of her own. (*Id.* at PageID 245, ¶¶ 15-17.)

The Franchise Agreement does appear to be a form contract drafted by Plaintiff (Doc. 6-1 at PageID 198, ¶ 5), but Defendants were encouraged to seek counsel before signing the Franchise Agreement. Specifically, Plaintiff gave Defendants a Home Helpers Franchise Disclosure Document ("FDD") which provides, in part:

> This disclosure document summarizes certain provisions of your franchise agreement and other information in plain English. Read this disclosure document and all accompanying agreements carefully. You must receive this disclosure document at least 14 calendar days before you sign a binding agreement or make any payment in connection with the proposed franchise sale. **Note, however, that no government agency has verified the information contained in this document.**
>
> The terms of your contract will govern your franchise relationship. Don't rely on the disclosure document alone to understand your contract. Read all of your contract carefully. Show your contract and this disclosure document to an advisor, like a lawyer or an accountant.
>
> Buying a franchise is a complex investment. The information in this disclosure document can help you make up your mind. More information on franchising, such as "A Consumer's Guide to Buying a Franchise," which can help you understand how to use this disclosure document is available from the Federal Trade Commission. You can contact the FTC at 1-877-FTC-HELP or by writing to the FTC at 600 Pennsylvania Avenue, NW, Washington, DC 20580. You can also visit the FTC's home page at www.ftc.gov for additional information. Call your state agency or visit your public library for other sources of information on franchising.
>
> There may also be laws on franchising in your state. Ask your state agencies about them.

(Doc. 10 at PageID 248 (emphasis in original)).

In addition, Defendants were given ample opportunity to obtain counsel. Defendants signed a receipt on June 6, 2014, indicating they had received the FDD along with a Franchise Agreement and various other documents (including a list of franchisees who had left the system). (Doc. 10 at PageID 247.) Defendants signed the Franchise Agreement on August 2, 2014 (Defendant Pawson) and August 6, 2014 (Defendant Minichino)—approximately two months after receiving all the relevant documents and being encouraged to seek counsel from an accountant, a lawyer, or relevant state or federal agencies. (Doc. 1 at PageID 66.) The Franchise Agreement did not become effective until April 1, 2015, the date on which Plaintiff's representative signed the agreement—thereby providing Defendants nearly eight additional months to review, seek counsel, or withdraw from the agreement. (Doc. 1 at PageID 66; Doc. 10 at PageID 242, ¶ 6.) Finally, there is evidence that other home health care franchises were available to Defendants. (Doc 10 at PageID 246, ¶ 20.) In fact, Plaintiff has since purchased a different system. (Doc. 11-1 at PageID 284, ¶ 7). Thus, Defendants were not in a situation where they were forced to accept an offer from Plaintiff or be left with nothing.

Moreover, a franchise agreement is a significant business venture, not a form contract signed by vulnerable customers from the general public. *See Rodriguez v. Tropical Smoothie Franchise Dev. Corp.*, 2012 WL 12770 (S.D. Ohio Jan. 3, 2012); *Doctor's Associates, Inc. v. Jabush*, 89 F.3d 109, 113 (2d Cir. 1996). Under these circumstances, the Court concludes that Defendants have not demonstrated the "absence of meaningful choice"[3] required to establish procedural unconscionability.

---

[3] *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 358, 884 N.E.2d 12 (2008).

**b.** *Substantive Unconscionability*

In contrast to procedural unconscionability, "[s]ubstantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable." *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, 200 (8th Dist. 2015) (quoting *Collins*, 86 Ohio App. 3d at 834). "When a contractual term is 'so one-sided as to oppress or unfairly surprise' a party, the contractual term is said to be substantively unconscionable." *Id.* (quoting *Neubrander v. Dean Witter Reynolds, Inc.,* 81 Ohio App. 3d 308, 311-312, 610 N.E.2d 1089 (9th Dist. 1992)).

In the case at bar, there is no question that the large claim exception favors Plaintiff. Plaintiff alone has the right to require disputes involving more than $100,000 be litigated rather than arbitrated. (Doc. At PageID 61.) Defendants correctly note that the large claim exception to the arbitration clause gives "Plaintiff a stick to deter franchisees from bringing larger claims against their franchisor, or can be wielded to make it more difficult for franchisees to defend larger claims." (Doc. 6 at PageID 192.) Plaintiff counters that the large claim exception is seldom invoked—as eighty-five percent of its claims are less than $100,000—and is necessary to protect not only Plaintiff but also Plaintiff's approximately 299 other franchisees from being disproportionately affected by one franchisee. (Doc. 10 at PageID 236, 246.)

When a dispute arises, the decision to litigate or to arbitrate often involves many considerations, including discovery differences, associated discovery costs, potential evidentiary differences, variations in damage awards, and expenses related to litigating in a distant forum. As Defendants repeatedly note, it is usually the corporation or franchisor who moves to compel arbitration rather than—as here—the individual franchisees, thereby illustrating the complex

10

balance of considerations in determining whether litigation or arbitration is more advantageous to a particular claim or claimant.

Plaintiff and Defendants entered into a complicated Franchise Agreement covering a large number of topics. Article 16, labeled "ENFORCEMENT," is less than two pages in length. The arbitration clause (Section 16.2) and the large claim exception (Section 16.3) are relatively short, written in plain English without a significant amount of legalese, and in the same type face and size as the rest of the agreement. The large claim exemption is entitled "<u>Exception to Arbitration</u>" and written so that the underline attracts attention to the subject matter of the paragraph. (Doc. 1 at PageID 61.) While this particular clause provides Plaintiff an advantage—the opportunity to choose litigation over arbitration—not shared by Defendants, it is not so one-sided as to be considered commercially unreasonable. Unlike the cases Defendants cite in their Petition,[4] Plaintiff does not have the ability to unilaterally alter or revoke the arbitration clause or large claim exception to the arbitration clause. Rather—by the specific terms to which Defendants agreed—if the amount in controversy exceeds $100,000, Plaintiff may choose to require litigation over arbitration. If not, both parties must arbitrate. Thus, while this particular clause benefits Plaintiff rather than Defendants, it does not oppress or unfairly surprise Defendants and is not commercially unreasonable. Therefore, it is not substantively unconscionable.

---

[4] The cases Defendants raise relate to mutuality of obligation rather than substantive unconscionability. As the Court explained in *Raasch v. NCR Corp.*, 254 F.Supp. 2d 847, 855-856 (S.D. Ohio 2003)(citations omitted), "Mutuality of obligation, or lack thereof, is not a problem in this case. The concept of mutuality of obligation requires that both parties to a contract be bound by the terms of the contract. *See, e.g., Floss [v. Ryan's Family Steakhouses, Inc.],* 211 F.3d [306] at 315–16 [(6th Cir. 2000)]. It goes hand in hand with the concepts of "consideration" and the "illusory promise" (which is basically an empty promise: promising to do one thing while, at the same time, expressly retaining the right to change one's mind) . . . What mutuality of obligation *does not* mean is that the terms of the contract must be equally balanced so that one side cannot benefit from the bargain more than the other."

Accordingly, the large claim exception to the arbitration clause is neither procedurally nor substantively unconscionable and will not be severed from the Franchise Agreement. Because the large claim exception applies in this case, the terms of the agreement provide Plaintiff the option to choose litigation rather than arbitration.

**C. Injunctive Relief Exception**

Defendants also contend that this Court should order arbitration of the claims seeking monetary damages rather than injunctive relief because the Franchise Agreement's injunctive relief exception (Section 16.1) should apply to only one of Plaintiff's seven claims. Because the large claim exception to the arbitration clause applies to all claims in this case, Defendants' injunctive relief exception argument is moot.

**D. Ohio Venue Provision**

The Franchise Agreement contains a one-page "California Addendum to Franchise Agreement." (Doc. 1 at PageID 83.) Pursuant to the "California Addendum," sections 16.2, 18.3, and 18.4 of the Franchise Agreement are amended to reference California Business and Professions Code Sections 20000 through 20043, stating, "If the franchise agreement contains a provision that is inconsistent with the law, the law will control." *Id.*

In their Petition to Compel Arbitration (Doc. 6), Defendants ask the Court to strike the Franchise Agreement venue provision, referencing their demand for arbitration. In response, Plaintiff argues that venue is proper in this Court. Defendants reply that Plaintiff misconstrues their argument, stating, "Defendants only seek as part of the order a ruling that the offending language [Ohio choice of venue provision] be stricken as a matter of law. They are not challenging this Court's jurisdiction, but intend to raise the issue with AAA as to where proper venue of the arbitration should eventually be located." (Doc. 11 at PageID 279.)

The Court declines to address the Ohio venue provision at this juncture. As explained above, Defendants' Petition to Compel Arbitration must be denied because the large claim exception permits Plaintiff to litigate this matter. In view of this ruling, the parties may choose to raise and brief the venue issue for litigation, but it is not before the Court at this time.

**III.    CONCLUSION**

For the foregoing reasons, Defendants' Petition to Compel Arbitration and Dismiss this Action or in the Alternative Stay the Action Pending Resolution of the Arbitration (Doc. 6) is **DENIED**.

**IT IS SO ORDERED**.

Dated:  March 23, 2018                    S/Susan J. Dlott_____
                                          Judge Susan J. Dlott
                                          United States District Court